**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| STEVE MCLEOD,<br><br>Plaintiff,<br><br>v.<br><br>UPMC CHILDREN'S HOSPITAL OF<br>PITTSBURGH et al.,<br><br>Defendants. | Civil Action No. 21-116 (RK) (JTQ)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Report and Recommendation ("R&R," ECF No. 67) and Supplemental Report and Recommendation ("Supplemental R&R" or "Supp. R&R," ECF No. 78) of the Honorable Justin T. Quinn, U.S.M.J., (collectively, "R&Rs") which recommend dismissing this action with prejudice based on *pro se* Plaintiff Steve McLeod's ("Plaintiff" or "McLeod") failure to prosecute the case and otherwise comply with Court orders. (R&R at 1; Supp. R&R at 2.) In response to the R&R, on October 16, 2024, Plaintiff filed a letter requesting that the Court "reconsider this ruling." ("Objection," ECF No. 69.) The Court construes this as an objection to the R&R. Additionally, on August 13, 2025, Plaintiff filed a "Response in Opposition" to the Supplemental R&R. ("Supp. Objection," ECF No. 80, Collectively with the Objection, "Objections".) The Court construes this as an objection to the Supplemental R&R. The Court has considered the R&Rs and the Objections and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the recommendation of the R&Rs is **ADOPTED**, and the Complaint is **DISMISSED** with prejudice.

## I.    BACKGROUND

*Pro se* Plaintiff Steve McLeod, a resident of New Jersey, brings claims against a hospital in Pittsburgh, Pennsylvania and other individuals, some associated with the hospital, in connection with alleged mental health treatment his daughter was receiving without his consent. This is not Plaintiff's first foray into federal court. In fact, Plaintiff has filed nine lawsuits in the District of New Jersey alone since 2019.[1] *See McLeod v. Fifth Jud. Dist. of PA*, No. 20-20475, 2024 WL 5264272, at *1 n.4 (D.N.J. Dec. 31, 2024).

The matter presently before the Court has a protracted history and has been pending for over five years since the initial Complaint was filed in January 2021. (*See* ECF No. 1.) Despite the lengthy history of the case, no answers have been filed. While difficult to discern, the predominantly handwritten allegations, found in the initial Complaint, (ECF No. 1), and the Amended Complaint, (ECF No. 31), appear to arise from a contentious matter, in and out of family court in Pennsylvania, involving Plaintiff's daughter. Plaintiff alleges that he was falsely accused of child abuse by Defendants Carolyn Jones ("Jones") and Lavaughn Lane-Evans[2] ("Lane-Evans"). (*Id.* at 3.)[3] As a result of those accusations, Plaintiff contends that the UPMC Children's Hospital of Pittsburgh ("UPMC") and individuals associated with UPMC provided his daughter with mental health treatment without his consent. (*Id.* at 4.) Plaintiff further alleges that the

---

[1] *McLeod v. Camper, et al.*, No. 23-2374 (terminated for failing to pay filing fee or submitting an *in forma pauperis* application); *McLeod v. Brick Township Police Department*, No. 22-5704 (administratively terminated); *McLeod v. Fifth Judicial District, et al.*, No. 20-20475 (third amended complaint dismissed, appeal dismissed); *McLeod v. Rodriguez*, No. 19-12360 (dismissed pursuant to Federal Rule of Civil Procedure 4(m)); *McLeod v. Fifth Judicial District, et al.*, No. 19-12893 (case transferred to the Western District of Pennsylvania); *McLeod v. Camper, et al.*, No. 19-20421 (third amended complaint dismissed, appeal dismissed); *McLeod v. Fitzpatrick Mcgough, et al.*, No. 20-1362 (third amended complaint dismissed); *McLeod v. Costco Whole Sale*, No. 21-11757 (remanded to Superior Court of New Jersey).

[2] Defendants Jones and Lane-Evans have yet to appear in this matter. Further, there is no record of Lane-Evans ever being properly served with process. (*See* ECF No. 11 ("Summons Returned Unexecuted . . . .")).

[3] Because certain documents lack consistent pagination, the Court cites to the page numbers generated by ECF.

Pennsylvania family court judge overseeing his case, who is not named as a defendant, retaliated against him. (*Id.* at 4.)

Between the filing of the initial Complaint and the Amended Complaint in September 2022, Defendants filed two motions to dismiss, (ECF Nos. 12, 20), and McLeod filed motions to appoint pro bono counsel, (ECF No. 26), and to "disqualify" Defendants' Counsel, (ECF No. 27). Thereafter, Defendants again moved to dismiss, (ECF No. 34), and Plaintiff again moved for the appointment of pro bono counsel, (ECF No. 35). As justifying his need for pro bono counsel, Plaintiff informed the Court that he was going through medical issues and was under "heavy medication."[4] (*Id.* at 1.) Following two adjournment requests by McLeod, (ECF Nos. 37, 40), the Honorable Zahid N. Quraishi, U.S.D.J. denied Plaintiff's request for pro bono counsel and granted his request to stay the case, (ECF No. 41).

In April 2023, while the case was stayed, Plaintiff served a subpoena on a non-party employee of UPMC for the production of documents. (*See* ECF No. 43 at 2.) The next month, the case was reopened, (ECF No. 42), and Defendants filed a Motion to Quash the subpoena, (ECF No. 43 at 2). Plaintiff then moved to compel compliance with the subpoena. (ECF No. 47.) In June 2023, Plaintiff indicated that he would serve a second subpoena on a different non-party employee of UPMC, again to produce documents. (ECF No. 53 at 2.) The following month, Defendants moved to quash the second subpoena. (*Id.*) In November 2023, the Honorable Douglas E. Arpert, U.S.M.J., denied the aforementioned discovery motions, (ECF Nos. 43, 47, 53), because the case had not yet reached discovery and ordered that "[n]o party should be engaged in discovery at this time," (ECF No. 54).

---

[4] At no point has Plaintiff substantiated his medical issues by way of a declaration or affidavit from a treating physical or any other medical professional.

While the discovery motions were pending, Plaintiff filed a Motion for a Temporary Restraining Order ("TRO") seeking to enjoin Defendants from providing Plaintiff's daughter with mental health treatment without his consent.[5] (ECF No. 45.) In a March 2024 decision, the Court denied Plaintiff's Motion for a TRO for failing to demonstrate a likelihood of success on the merits. (ECF No. 55 at 7.) Following the Court's decision, Judge Quinn scheduled an in-person conference for July 25, 2024 to address outstanding issues in the action.[6] (ECF No. 58.) Defendants' Counsel representing UPMC, Megan McGraw, LCSW ("McGraw"), and Sapina Parker, M.D. ("Dr. Parker") sought an adjournment of the July 25, 2024 conference but was unable to reach Plaintiff for his consent. (ECF No. 59.) Plaintiff's nonresponsiveness persisted from there on, not only to Defendants, (*see* ECF Nos. 61, 65, 66), but also to the Court in complying with orders of Judge Quinn directing Plaintiff to communicate with Defendants' Counsel, (*see* ECF Nos. 62 and 64).

On July 19, 2024, Judge Quinn ordered that, within six days, the parties were to confer and propose new dates for a court conference. (ECF No. 60.) On July 25, 2024, Defendants' Counsel filed a letter indicating that they had still been unable to reach Plaintiff. (ECF No. 61.) The same day, Judge Quinn again ordered the parties to confer, by August 1, 2024, on possible dates for a court conference. (ECF No. 62.) As part of that Order, Judge Quinn "directed [Plaintiff] to promptly contact Defendants' counsel." (*Id.*) On August 1, 2024, Defendants' Counsel, once again, notified the Court that he had been unable to make contact with Plaintiff. (ECF No. 63.)

Following repeated silence from Plaintiff, Judge Quinn, in an August 1, 2024 Order, "provide[d] Plaintiff [with] one last opportunity to move this matter forward and abide by the Court's directives." (ECF No. 64.) Judge Quinn put Plaintiff on notice that if he "fail[s] to comply

---

[5] On May 15, 2023, the case was reassigned to the Undersigned. (ECF No. 46.)

[6] On May 31, 2024, this matter was reassigned from Judge Arpert to Judge Quinn. (*See* Docket Entry dated May 31, 2024.)

with the Court's Order, the Court will consider the imposition of sanctions, including a recommendation that this matter be dismissed based upon Plaintiff's failure to prosecute." (*Id.*) Following that Order, Defendants' Counsel made one last attempt to reach Plaintiff by email, (*see* ECF No. 66 at 2), but Plaintiff, yet again, failed to communicate with either Defendants' Counsel or the Court, (*see id.* at 1).

On September 30, 2024, Judge Quinn submitted the subject R&R recommending that Plaintiff Steve McLeod's Amended Complaint be dismissed with prejudice under Federal Rule of Civil Procedure ("Rule") 41(b) for failure to prosecute. (R&R at 2.) After affording Plaintiff multiple opportunities to participate in the case, Judge Quinn found dismissal appropriate on the basis of Plaintiff's failure to obey Court orders and prosecute his case. (*Id.* at 1.) Judge Quinn weighed the six factors set out in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), and determined that all favored dismissal. (*Id.* at 2–5.)

Following the R&R, after months of silence, Plaintiff did an about-face and resumed participation in the case by filing a letter requesting reconsideration, which the Court construes as an Objection to the R&R.[7] Plaintiff contends that vaguely described medical issues have impeded his ability to participate in the matter. (Objection at 1.) He further seeks to have this action stayed while he undergoes further medical treatment. (*Id.*) Additionally, he claims that his daughter, AJM, was not receiving notices of docket entries in this case and was involuntarily removed as a plaintiff. (*Id.*) A letter from AJM was appended to Plaintiff's filing stating, "I am still an active plaintiff on these cases and had no intention to remove myself and therefore I did not." (*Id.* at 3.) AJM further disputes dismissal because she did not receive any of the docket entries in this case. (*Id.*) *Pro se*

---

[7] Although the objections came in 16 days after the R&R was issued, a Certified Mail Receipt filed on the docket indicates Plaintiff received the R&R on October 9, 2024, thus the objections were filed within 14 days of service of the R&R. (*See* ECF No. 68.)

Plaintiff's Objection does not specifically identify *portions* of the R&R.[8]

The same day the Objection was filed, Plaintiff filed a letter "requesting permission to appeal" the R&R. (ECF No. 70.) This letter reiterates the same arguments as the Objection, principally arguing AJM was denied the opportunity to participate in this lawsuit and Plaintiff's medical issues impeded his ability to prosecute this case.[9] (*Id.* at 1.)

Out of an abundance of caution, the Court issued a Text Order on May 6, 2025 requesting that Judge Quinn "undertake an inquiry as to Plaintiff's purported medical complications" and then issue a supplemental Report and Recommendation considering the inquiry into Plaintiff's health. (ECF No. 75.)

Pursuant to the Court's request, Judge Quinn issued a Letter Order on June 20, 2025 requesting that Plaintiff substantiate his medical issues through a declaration or affidavit from a medical professional, and any relevant hospital records by July 2, 2025. (*See* ECF No. 76.) Having heard nothing from Plaintiff, Judge Quinn issued a second Letter Order providing Plaintiff with "*one last* opportunity to comply and file the appropriate documentation" by July 17, 2025. (ECF No. 77.) Plaintiff failed to file anything in response to either Letter Order.

Then, on July 30, 2025, Judge Quinn issued a supplemental Report and Recommendation recommending that the matter be dismissed with prejudice. (Supp. R&R) Because Plaintiff failed to respond to the further inquiry regarding his medical conditions, Judge Quinn found there was "no reason to revisit [his] prior analysis." (*Id.* at 2.) He found this "further evidences [Plaintiff's]

---

[8] In liberally construing Plaintiff's Objection, the Court will consider it an objection to the R&R's analysis of the *Poulis* factors and assess the *Poulis* factors *de novo*.

[9] Seven days after the letters were filed, Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. (ECF No 72.) This Court was then divested of jurisdiction until the Third Circuit's March 31, 2025 Certified Order (ECF No. 74) denying Plaintiff's appeal for lack of jurisdiction. *Shultz v. County of Franklin*, No. 24-2380, 2025 WL 869494, at *2 (3d Cir. Mar. 20, 2025) (per curiam) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

disregard for Court Orders." (*Id.*) According to the certified mail return receipt, Plaintiff received the Supplemental R&R on August 1, 2025. (ECF No. 79.)

Plaintiff then filed an additional objection to the Supplemental R&R. (*See* Supp. Objection.) He claims that he did not receive certain notifications, that this case could be transferred to Pennsylvania, and that the Health Insurance Portability and Accountability Act ("HIPAA") shields his medical information. (*Id.* at 2–3.) He also, again, asks for an extension of time. (*Id.* at 3.)

## II.    LEGAL STANDARD

Local Civil Rule 72.1 allows a party to object to a magistrate judge's report and recommendation within fourteen (14) days of service. L. Civ. R. 72.1(c)(2). The objection "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." *Id.* Upon a party's objection, the district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.*; *see also Kenny v. United States*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012) (upon objection, a district court reviews a magistrate judge's dispositive recommendation *de novo*). "As to uncontested portions of the report, the district court has discretion to choose an appropriate standard of review. At a minimum, what is not objected to, the district court reviews under the plain error or manifest injustice standard." *Brainbuilders, LLC v. Optum, Inc.*, No. 18-638, 2019 WL 2315389, at *2 (D.N.J. May 31, 2019) (internal quotation marks omitted).

## III.    DISCUSSION

Judge Quinn's well-reasoned R&R and Supplemental R&R recommend that the Amended Complaint be dismissed with prejudice under Rule 41 for failure to prosecute and to comply with the Court's orders. (*See* R&R; Supp. R&R.)

## A. FEDERAL RULE OF CIVIL PROCEDURE 41

Rule 41 provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Courts have discretion to *sua sponte* dismiss a case for failure to comply with court orders or to prosecute the case. *See Iseley v. Bitner*, 216 F. App'x 252, 254–55 (3d Cir. 2007) (per curiam) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). A dismissal under Rule 41 "operates as an adjudication on the merits" subject to certain exceptions not applicable here. *See* Fed. R. Civ. P. 41(b). While dismissal under Rule 41(b) is a "harsh sanction," it is an important tool for courts to manage their own docket and prevent undue delay. *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 161 (3d Cir. 2003); *see also Roberts v. Ferman*, 826 F.3d 117, 122–23 (3d Cir. 2016).

In most cases, the United States Court of Appeals for the Third Circuit requires that courts consider the *Poulis* factors in determining whether a dismissal under Rule 41(b) is warranted. *See Rawls v. Gibbs*, 741 F. App'x 108, 109–10 (3d Cir. 2018) (per curiam). On rare occasions, however, a court may dismiss a case without considering the *Poulis* factors "when a plaintiff acts contumaciously after the district court warns him that the case may be dismissed for noncompliance."[10] *Bush v. Dep't of Hum. Servs.*, 485 F. App'x 594, 597 (3d Cir. 2012) (per curiam) (citations omitted).

Judge Quinn, repeatedly, put Plaintiff on notice that a continued failure to comply with Court orders could result in sanctions, including twice recommending that the matter be dismissed for failure to prosecute. (*See* ECF No. 64; R&R; Supp. R&R.) However, out of an abundance of

---

[10] Black's Law Dictionary defined "contumacious conduct" as "[a] willful disobedience of a court order." *Contumacious Conduct*, Black's Law Dictionary (12th ed. 2024); *Conduct*, Black's Law Dictionary (12th ed. 2024).

8

caution and affording the *pro se* Plaintiff every favorable inference, *see Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005) (per curiam), the Court declines to make a finding as to whether Plaintiff acted "contumaciously" given his representations regarding his ongoing medical issues, (*see* Objection; Supp. Objection).

## B. *POULIS* FACTORS

Therefore, in determining whether to adopt the recommendation to dismiss with prejudice under Rule 41(b), the Court considers the following six *Poulis* factors:

> (1) the extent of the party's responsibility; (2) the prejudice to the adversary caused by the party's action or inaction; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of alternate sanctions; and (6) the meritoriousness of the claim or defense.

*Charles v. Keurig Dr Pepper Inc*, No. 19-8857, 2020 WL 6946886, at *2 (D.N.J. Nov. 25, 2020) (quoting *Poulis*, 747 F.2d at 868). The Court's *de novo* review of the *Poulis* factors follows.

### 1.  *The Extent of the Party's Responsibility*

It is axiomatic that a *pro se* Plaintiff is "solely responsible" for furthering his case. *See Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008); *see id.* at 258–59 (contrasting a *pro se* plaintiff's responsibility from that of one who shares responsibility when represented by counsel). Although McLeod asserts that his daughter AJM is a plaintiff in this matter and has not been properly included as such, neither the initial Complaint nor the Amended Complaint lists her as a plaintiff. (*See* Objection; ECF Nos 1, 31.) Therefore, McLeod is the only proper plaintiff in this matter. Plaintiff explains that "extensive healthcare treat[ment] for serious medical complications" prevented him from prosecuting the case. (Objection at 1.) Notwithstanding Plaintiff's unfortunate health situation, he is responsible for prosecuting his case, especially when it has been going on for over five years. Moreover, at no point has Plaintiff substantiated his medical conditions by way of affidavit or declaration of a treating physician or any other medical professional. *See Emerson*

9

*v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (per curiam) (considering "unsubstantiated allegations of medical disability" under the first *Poulis* factor). Plaintiff's argument regarding HIPAA does not change this conclusion, as he could have simply provided his medical records to the Court and requested that they be filed under seal. *See Everett v. Nort*, 547 F. App'x 117, 122 n.9 (3d Cir. 2013) (allowing medical records to be filed under seal).

Plaintiff's unspecified and unsubstantiated claims regarding lack of notice also do not change this. Plaintiff does not explain what exactly he was not notified of. The docket indicates that the relevant orders were mailed to Plaintiff, and a number of Judge Quinn's Text Orders were forwarded to Plaintiff from Defendants via email. (*See* ECF Nos. 65–66.) Moreover, the fact that Plaintiff objected to both R&Rs indicates that he was receiving notices. (*See* Objection; Supp. Objection.) Therefore, McLeod, as the only plaintiff and proceeding *pro se*, is solely responsible. This factor favors dismissal.

2. *The Prejudice to the Adversary Caused by the Party's Action or Inaction*

Defendants are entitled to finality, and any extension of this drawn-out case further prejudices Defendants. Prejudice to the adversary is a particularly important factor and "bear[s] substantial weight in support of a dismissal." *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 134 (3d Cir. 2019) (alteration in original) (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)); *cf. Eady v. Tapfury LLC*, No. 22-2619, 2023 WL 3376541, at *1 (3d Cir. May 11, 2023) (per curiam) (finding district court did not abuse its discretion when it denied plaintiff's request for an extension to file a notice of appeal because defendants "were 'entitled to finality' and in danger of prejudice"). Plaintiff's litigation tactics, including his failure to respond to Court orders unduly delayed disposition of this matter. *See, e.g., Jit Shi Goh v. Coco Asian Cuisine, Inc.*, No. 15-6310, 2018 WL 7412833, at *3 (D.N.J. July 23, 2018) ("Defendants' inactivity and failure to comply with the Court's Orders has prejudiced Plaintiff."), *report and recommendation*

10

*adopted*, 2019 WL 861374 (D.N.J. Feb. 22, 2019). Additionally, Defendants here are represented by counsel who has expended time and energy in this matter, thus any further delays in the resolution of this case prejudices defendants in legal costs. *See, e.g, MicroBilt Corp. v. Bail Integrity Sols., Inc.*, No. 19-637, 2024 WL 2301370, at *8 (D.N.J. May 21, 2024) ("[O]bstructive behavior and delay tactics have significantly increased the cost and duration of this litigation and impeded resolution of this case, which has now been ongoing for over five (5) years, resulting in prejudice to [the adversary].") This factor favors dismissal.

### 3. *A History of Dilatoriness*

Plaintiff's approach to litigating this case, including frequent motions, requests for adjournments, and periods of inactivity has unreasonably delayed this five-year-old case. *See, e.g., Kuminka v. Atlantic County*, No. 10-5233, 2014 WL 4854322, at *2 (D.N.J. Sept. 30, 2014) (finding the "history of dilatoriness" factor favors dismissal in a case pending for four years where "[t]he Court ha[d] expended considerable time dealing with disputes that arose due to [Plaintiff's] recalcitrance"). Since the filing of the Complaint on January 5, 2021, Plaintiff has filed nine motions. (*See* ECF Nos. 26, 27, 32, 35, 36, 45, 47, 57, 69, 81.) Defendants, combined, have filed another five motions: three motions to dismiss and two motions to quash Plaintiff's subpoenas that were served or intended to be served before formal discovery commenced. (*See* ECF Nos. 12, 20, 34, 43, 53.) Plaintiff also requested multiple adjournments: first in November 2022, (ECF No. 37), and then again shortly thereafter, (ECF No. 40). Following the second request, the Court granted Plaintiff's request and stayed the case. (ECF No 41.)

The age of the case coupled with Plaintiff's conduct shows a history of dilatoriness. *See Briscoe*, 538 F.3d at 260 ("Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders." (quoting *Adams v. Tr. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994))); *see also Emerson*,

11

296 F.3d at 191 (finding the "procedural history of [the] case reflect[ed] continuous dilatoriness" where plaintiff made multiple requests for stays and failed to comply with multiple deadlines). Plaintiff's pattern of oscillating between successive motion filings and prolonged silence demonstrates dilatoriness that favors dismissal.

4.  *Whether the Conduct of the Party was Willful or in Bad Faith*

While the Court is unable to conclude whether McLeod acted in bad faith, his failure to comply with Court orders and repeated delays of this case does not bespeak mere inadvertence or negligence. *See, e.g., Gremo v. Bayer Corp.*, No. 19-13432, 2025 WL 509164, at *4 (D.N.J. Feb. 13, 2025) ("Where the record is unclear as to whether a party acted in bad faith, a consistent failure to obey orders of the court, at the very least, renders a party's actions willful for the purposes of the fourth Poulis factor." (cleaned up) (quoting *Hunt–Ruble v. Lord, Worrell & Richter, Inc.*, No. 10-4520, 2012 WL 2340418, at *5 (D.N.J. June 19, 2012))). Even when considering the alleged serious medical complications, Plaintiff does not allege that he was incapacitated for a prolonged period, nor did he make any effort to communicate with Defendants or the Court during, or in advance of, extended periods of inactivity. Thus, while the Court does not find that Plaintiff acted in bad faith, Plaintiff's consistent failures to comply with Court orders or communicate with the Court and Defendants illustrates, at least, reckless disregard. Given Plaintiff's medical condition, this factor only moderately favors dismissal.

5.  *The Effectiveness of Alternate Sanctions*

The fifth factor requires courts to consider the effectiveness of other, less drastic sanctions. *Poulis*, 747 F.2d at 868. "The Third Circuit has identified a number of alternative sanctions available to a court, including 'a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees . . . [or] the preclusion of claims or defenses . . . .'" *Smith ex rel. El Ali v. Altegra Credit Co.*, No. 02-8221, 2004 WL 2399773, at *7

(E.D. Pa. Sept. 22, 2004) (alterations in original) (quoting *Titus v. Mercedes Benz of N. Am.*, 695 F.2d 746, 749 n.6 (3d Cir. 1982)). However, where a plaintiff is proceeding *pro se* and *in forma pauperis*, sanctions short of dismissal are ordinarily inadequate. *Briscoe*, 538 F.3d at 262–63 ("[W]here a plaintiff is proceeding *pro se*, and moreover, is proceeding *in forma pauperis*, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'" (quoting *Emerson*, 296 F.3d at 191)). As is the case here, monetary sanctions against McLeod, who is proceeding *in forma pauperis*, would not be effective. Further, Plaintiff's history of nonparticipation necessitates dismissal because "[a]bsent a plaintiff who is participating in the legal process, this case cannot move forward." *Brooks v. Steberger*, No. 23-4535, 2024 WL 5159885, at *5 (E.D. Pa. Dec. 18, 2024). Accordingly, this factor favors dismissal.[11]

### 6. *The Meritoriousness of the Claim or Defense*

Under the sixth and final *Poulis* factor, courts assess the meritoriousness of a claim under the Rule 12(b)(6) standard used for motions to dismiss. *Hildebrand*, 923 F.3d at 137. As the Court previously noted in its decision on Plaintiff's TRO, the allegations in the Amended Complaint are "murky." (ECF No. 55 at 2.) At this stage, the Court remains doubtful that the Amended Complaint has any merit. Allegations that Defendants Jones and Lang-Evans reported Plaintiff for child abuse are not actionable as such reporting persons are immune from liability for making such a report. N.J. Rev. Stat. § 9:6-8.13; 23 Pa. Cons. Stat. § 6318(a)(1). Further, even when reading the Amended Complaint in the light most favorable to the *pro se* Plaintiff, there is insufficient factual matter to ascertain any cognizable claim against UPMC, Dr. Parker, or McGraw. This factor favors

---

[11] Plaintiff's request to transfer this case to Pennsylvania would not sanction him in any way or cure the issues discussed by the Court. (*See* Supp. Objection at 2.)

13

dismissal.

## C. BALANCING THE FACTORS

Once a court analyzes the *Poulis* factors, it then weighs them to determine the proper outcome. The Third Circuit has declined to prescribe "a magic formula or mechanical calculation" to determine whether a dismissal is appropriate. *Briscoe*, 538 F.3d at 263 (internal quotation marks omitted). "None of the *Poulis* factors is alone dispositive, and it is also true that not all of the factors need to be satisfied to justify dismissal . . . ." *Hildebrand*, 923 F.3d at 132 (citing *Briscoe*, 538 F.3d at 263). Moreover, the Court is cognizant of the fact that "dismissal with prejudice [is] an 'extreme' sanction" and that the Third Circuit has a "strong policy favoring decisions on the merits." *Id.* (quoting *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Nonetheless, while the Court is sympathetic to litigants facing medical challenges, consideration of each *Poulis* factor—individually and collectively—compels dismissal. Further, there is no "balancing" exercise required here since each factor favors dismissal. Therefore, the Court adopts the recommendation of the R&Rs and finds dismissal is the appropriate outcome here.

14

## CONCLUSION

For the reasons set forth above, the Report and Recommendation and Supplemental Report and Recommendation are **ADOPTED**, and the Amended Complaint is **DISMISSED** with prejudice. An appropriate Order accompanies this Memorandum Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 7, 2026